UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ORGANICNATURALSNACKS.COM, LLC,

                Plaintiff,

v.                                                        1:15-CV-0741(GTS/DJS)

UNITED NATURAL FOODS, INC.,

                Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

OFFICE OF PAUL C. RAPP                       PAUL C. RAPP, ESQ.
  Counsel for Plaintiff
P.O. Box 366
Monterey, MA 01245

HANCOCK ESTABROOK, LLP                   JANET D. CALLAHAN, ESQ.
  Counsel for Defendant
100 Madison Street, Suite 1500
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this diversity-based action for breach of contract filed by Organicnaturalsnacks.com, LLC ("Plaintiff") against United Natural Foods, Inc. ("Defendant" or "UNFI"), is Defendant's motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and to stay discovery pending disposition of its motion. (Dkt. No. 6 [Def.'s Motion]; Text Order filed Aug. 19, 2015; Dkt. No. 10 [Def.'s Reply Memo. of Law].) For the reasons set forth below, Defendant's motion is denied.

I.  **RELEVANT BACKGROUND**

   A.  **Plaintiff's Amended Complaint**

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. (Dkt. No. 7 [Plf.'s Am. Compl.].) In May 2010, the parties entered into an "Independent Broker Agreement" ("the Agreement"),[1] by which Plaintiff, a limited liability company with its principal place of business in Chatham, New York, became a "non-exclusive independent sales representative" of UNFI, a Delaware corporation with its principal place of business in Rhode Island. (*Id.* at ¶¶ 2-3, 5-6.) The Agreement "was apparently never signed," but the parties ratified the Agreement by performing according to its terms for five years. (*Id.* at ¶ 7.)

Pursuant to the Agreement, Plaintiff agreed "to exercise its best efforts to develop and promote the sale of [UNFI's line of snack products] in" certain "Territories and/or Business Segments set forth" in "Exhibit B" to the Agreement. (Dkt. No. 7, Attach. 1, at ¶ 1 [Agreement].) Moreover, Plaintiff agreed to "devote such time and effort as it deems appropriate to solicit and arrange for sales of the Products . . . ." (*Id.* at ¶ 4.) UNFI agreed to pay Plaintiff a commission of 4% "of the amount of all invoices for Products sold to customers obtained and/or introduced to [UNFI] by" Plaintiff. (*Id.* at ¶ 3; *accord,* Dkt. No. 7 at ¶ 8 [Plf.'s Am. Compl.].) UNFI's obligation to pay Plaintiff commissions "was to survive" termination of the Agreement as long as the customers remained with UNFI. (Dkt. No. 7 at ¶ 8.) The term of the Agreement was initially for one year with automatic renewals for "successive one (1) year periods," and both parties were entitled to terminate the Agreement with at least 90 days written notice prior to the

---

[1] The Agreement was filed as an attachment to the Amended Complaint. (Dkt. No. 7, Attach. 1.)

end of any annual period. (Dkt. No. 7, Attach. 1, at ¶ 2 [Agreement].) Based upon sales generated by customers "brought to" UNFI by Plaintiff (totaling around one million dollars annually), UNFI has paid commissions to Plaintiff totaling between $4,000 and $5,000 per month for nearly five years. (Dkt. No. 7 at ¶¶ 9-10 [Plf.'s Am. Compl.].)

In March 2015, UNFI notified Plaintiff that it would no longer pay Plaintiff commissions and stopped payment on Plaintiff's commission check for sales from March 2015 with no legal justification. (*Id.* at ¶¶ 11-13.) During the time the Agreement was in effect, Plaintiff "solicited orders on [UNFI's] behalf from its office in Columbia County . . . as well as solicited orders from potential customers located in" New York State. (*Id.* at ¶ 14.)[2]

Based upon these factual allegations, Plaintiff's Amended Complaint asserts three claims: (1) a claim for declaratory relief, declaring that the Agreement is "a valid and binding contract on the parties"; (2) a claim for breach of contract; and (3) a claim that Defendant violated New York Labor Law § 191-c, entitling Plaintiff to double damages and attorneys' fees. (*Id.* at ¶¶ 15-20.) Although Plaintiff's Amended Complaint did not allege entitlement to a specific amount of damages, it did assert that "the parties are domiciled in different states and the amount in controversy exceeds $75,000." (*Id.* at ¶ 4.) Familiarity with the factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

---

[2] The only distinction between Plaintiff's original Complaint and its Amended Complaint (which was filed contemporaneously with its opposition to Defendant's motion to dismiss) is the addition of paragraph 14 (which alleges the above-stated fact). (*Compare* Dkt. No. 1 [Plf.'s Compl.] *with* Dkt. No. 7 [Plf.'s Am. Compl.].)

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in support of its motion to dismiss, Defendant asserts three arguments: (1) Plaintiff's claim pursuant to New York Labor Law § 191-c for double damages on unpaid sales commissions fails to state a claim because (a) the statute requires payment of commissions within five days of termination and thus the claim is "anticipatory," and (b) Plaintiff is not a "sales representative" a defined in New York Labor Law § 191-a, in that Plaintiff has not alleged facts plausibly suggesting that it solicited orders in New York; (2) Plaintiff's first claim (for declaratory judgment) and second claim (for breach of contract) must be dismissed for lack of subject-matter jurisdiction because Plaintiff has not established that the amount in controversy is more than $75,000 in that (a) Plaintiff has not alleged entitlement to any specific amount of damages and (b) Defendant provided written notice of termination of the Agreement, and the commissions to which Plaintiff will be entitled through April 30, 2016 (the time at which the Agreement will end) "will not amount to $75,000"; and (3) discovery should be stayed pending the disposition of Defendants' motion to dismiss. (Dkt. No. 6, Attach. 3, at 8-17 [Def.'s Memo. of Law].)[3]

---

[3] In support of its motion to dismiss, Defendant has adduced a declaration sworn to by Stephanie Walker, "Regional Sales Manager, Foodservice" for Defendant. (Dkt. No. 6, Attach. 1, at ¶ 1 [Walker Decl.].) Walker asserts, among other things, as follows: (1) Plaintiff's principal "sold his business" around the time that the Agreement was "drafted," and therefore has "played no role in attempting to solicit or obtain" customers or sales for Defendant for most or all of the past five years (*id.* at ¶ 7); (2) Plaintiff "had a single customer that its principal introduced to [Defendant]" when the Agreement was entered into (*id.*); (3) since May 1, 2010, Defendant has paid Plaintiff's principal commissions totaling $166,961.94, or, stated otherwise, average annual commissions of $33,000 (*id.* at ¶¶ 8-9); (4) Defendant has provided Plaintiff written notice terminating the Agreement; and (5) based upon commission totals paid to Plaintiff during the past five years, "there is no realistic expectation that the volume of sales as to which a commission might be payable to Plaintiff will increase appreciably between now [i.e., July 27, 2015, the date of the declaration] and April 30, 2016 [i.e., the date on which the contract will terminate], or that any commission payable to Plaintiff during the remaining term of the Agreement, assuming its validity, would be greater than the annual average commission for the past five years" (i.e, $33,000) (*id.* at ¶ 9).

4

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in Plaintiff's response to Defendant's motion, Plaintiff asserts four arguments: (1) Defendant's request for dismissal of Plaintiff's claim under New York Labor Law § 191-c should be denied because (a) the basis of this argument is Stephanie Walker's improper declaration, which consists of "contestable factual allegations" that should not be considered on a motion to dismiss for failure to state a claim, (b) this claim is not premature, given that Defendant purportedly terminated the Agreement immediately, rather than as of April 2016, and has in fact stopped paying commissions, (c) to the extent that Plaintiff was required to specifically plead that it has solicited business in New York to state a claim, it has done so in its Amended Complaint, filed simultaneously with its opposition to Defendant's motion to dismiss, and (d) Plaintiff has in fact solicited orders "under the contract from its Columbia County office and also solicited orders under the contract from New York-based customers"; (2) the Court should not consider Walker's declaration with regard to Defendant's jurisdictional argument because it contains only "factual defenses" that are unsupported, and Defendant did not request that its motion to dismiss be converted to a motion for summary judgment; (3) rather, the Court should "rule purely on the sufficiency of the Complaint," which alleged that Plaintiff's damages exceed $75,000; and (4) even if Walker's declaration is considered, Plaintiff is entitled to commissions "so long as the sales under the contract continue," and thus Plaintiff's commissions will continue to accrue. (Dkt. No. 8 at 2-7 [Plf.'s Opp'n Memo. of Law].)[4]

---

[4] In support of its opposition memorandum of law, Plaintiff has adduced an affidavit sworn to by Robert Wohlfeld, Plaintiff's principal. (Dkt. No. 8, Attach. 1, ¶ 1 [Wohlfeld Aff.].) Wohlfeld asserts, among other things, as follows: (1) Plaintiff has solicited "business in New York State," both at customer locations and from its offices in Columbia County, New York (*id.* at ¶¶ 3-4); and (2) pursuant to the Agreement, Plaintiff has "solicited and received orders from, among others, OrganicWholesaleClub.com, a company that was based in New York State, Aromatic Refreshment, a New York-based company, and a number of smaller vending customers that were located in New York State, including Columbia County ARC, Skidmore College, and Price Chopper Corporation" (*id.* at ¶ 5).

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply, Defendant asserts four arguments: (1) the Court may properly consider affidavits and other materials beyond the pleadings to resolve the issue of subject-matter jurisdiction; (2) Plaintiff has not sufficiently refuted Walker's declaration; (3) Defendant "believes that" the assertions in Wohlfield's affidavit are "not accurate" and "contradicted by" Plaintiff's course of conduct and "admissions," and Defendant intends to move for summary judgment (and seek attorney's fees) at the earliest opportunity if its motion to dismiss is not granted; and (4) Plaintiff has "failed to devote *any* time or effort to developing or promoting or soliciting or arranging for the sale of [Defendant's] products" as required by the Agreement. (Dkt. No. 10 at 1-3 [Def.'s Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standards Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to

---

Moreover, Plaintiff has also adduced an affidavit from Plaintiff's counsel, attached to which is an email message dated April 15, 2015 from David Chavez, apparently Defendant's Director of Sales, to Bob Wolf, whose identity is unclear. (Dkt. No. 8, Attach. 2 [Plf.'s Counsel's Aff.]; Dkt. No. 8, Attach. 3 [email message, dated 4/15/2015].) Plaintiff's counsel was also copied on the email message as a recipient. (Dkt. No. 8, Attach. 3.) In the email message, Chavez asserted that Defendant "has paid ONS approximately $160,000 over the last four years," despite the fact that "[ONS] has not performed any work for [Defendant]." (*Id.*) Chavez acknowledged that he "placed a stop payment on the [unspecified] check," but that "[t]he check will be re-issued and ONS will be paid a commission for all sales made to date," despite Chavez's belief that "ONS is [not] legally entitled to this money." (*Id.*) Chavez asserted that the email message was to "serve as confirmation that [the Agreement] is terminated effective immediately in light of" Plaintiff's failure to perform under the Agreement. (*Id.*)

dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

"The diversity statute confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.'" *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332[a]).

"'A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount.'" *Scherer*, 347 F.3d at 397 (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 [2d Cir. 1994]). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Id.* (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 [2d Cir. 1999]).[5] Moreover, "[d]ifferent state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount-in-controversy requirement." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006); *accord*, *Wood*, 2011

---

[5] *See also Wood v. Maguire Auto. LLC*, 09-CV-0640, 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011) (Suddaby, J.) ("[I]n the event the complaint does not allege, on its face, facts plausibly suggesting that the amount in controversy exceeds the jurisdictional minimum, the court need not presume that the general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy.") (footnote omitted).

WL 4478485, at *3. The amount in controversy is measured "as of the date of the complaint." *Scherer*, 347 F.3d at 397.

"To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *Wolde-Meskel*, 166 F.3d at 63). "'[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070-71 [2d Cir. 1996]). Even where the allegations leave "grave doubt" as to whether the plaintiff will be able to recover the statutory amount, dismissal is not appropriate. *Id.* (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 [2d Cir. 1982]); *accord, Tongkook*, 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

Although "it must appear to a legal certainty from the complaint" that plaintiff will be unable to recover sufficient damages to invoke federal jurisdiction, "resorts to materials developed in discovery" has been permitted to "amplify the meaning of the complaint allegations." *Zacharia*, 684 F.2d at 202; *accord, J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits."). Moreover, "affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy.'" *Scherer*, 347 F.3d at 397 (quoting *Zacharia*, 684 F.2d at 202); *accord, Meyer v. Meyer*, 08-CV-1136, 2010 WL 2651910, at *5 (N.D.N.Y. June 25, 2010) (Sharpe, J.) ("'The fact that a plaintiff may not recover the minimum jurisdictional amount, or that a valid defense to the claim may exist, does not show the plaintiff's bad faith or oust the jurisdiction.'") (quoting *Tongkook Am., Inc.*, 14 F.3d at 784).

8

### B.  Legal Standard Governing Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

11

four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[6] **III.**

## III.  ANALYSIS

### A.  Whether Plaintiff's Claim Pursuant to New York Labor Law § 191-c Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 8 at 5-7 [Plf.'s Memo. of Law].) To those reasons, the Court adds two points.

---

[6]  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

First, in its Amended Complaint, Plaintiff has alleged facts plausibly suggesting (albeit barely) that Defendant violated New York Labor Law § 191-b (entitling Plaintiff to the relief provided for in § 191-c, including double damages)[7] because (a) Plaintiff allegedly contracted to serve as a sales representative for Defendant, (b) Plaintiff allegedly solicited orders from prospective New York State customers from its New York office on Defendant's behalf, and (c) Defendant allegedly failed to timely pay Plaintiff commissions upon terminating the Agreement. (Dkt. No. 7 [Plf.'s Am. Compl.].)

Second, in Defendant's reply memorandum of law (filed following the filing of Plaintiff's Amended Complaint, which included an allegation that Plaintiff solicited orders from its New York offices on Defendant's behalf from potential customers located in New York), Defendant does not expressly argue that Plaintiff has failed to cure the pleading defect that it purportedly identified in Plaintiff's original Complaint. Instead, Defendant argues merely that it "believes" Robert Wohlfeld's assertions in his affidavit (submitted in opposition to Defendant's motion) are "not accurate," and that, if its motion to dismiss is not granted, Defendant "intends to move at the earliest opportunity for summary judgment" and "will seek to recover attorney's fees in connection with that motion." (Dkt. No. 10 at 3 [Def.'s Reply Memo. of Law].) Moreover, Defendant "continues to maintain that[,] beyond initially bringing certain customers to [Defendant] five years ago[,] . . . Plaintiff has failed to devote *any* time or effort to developing or

---

[7] The statute provides, in part, that, when a contract between a "principal" and a "sales representative" is terminated, "all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated." N.Y. Labor Law § 191-c(1). A principal who fails to comply with the statute "shall be liable" for "double damages," and the prevailing party is also entitled to "reasonable attorney's fees, court costs, and disbursements." N.Y. Labor Law § 191-c(3). Statutory definitions of terms relevant to such a claim are set forth in New York Labor Law § 191-a.

promoting or soliciting or arranging for the sale of [Defendant's] products." (*Id.*)[8] While the Court expresses no opinion as to whether Plaintiff's claims would survive such a motion for summary judgment (or whether Defendant would be able to establish its entitlement to attorney's fees based on a showing of cause), for purposes of the present motion to dismiss, Defendant's arguments regarding the merits of Plaintiff's claims are unpersuasive.

For all of these reasons, the Court denies Defendant's request to dismiss Plaintiff's New York Labor Law claim.

**B.** **Whether Plaintiff's Declaratory Judgment Claim and Breach of Contract Claim Must Be Dismissed for Lack of Subject-Matter Jurisdiction Due to Plaintiff's to Failure to Satisfy the Amount in Controversy Requirement**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 8 at 2-4 [Plf.'s. Memo. of Law].) To those reasons, the Court adds two points.

First, with regard to Plaintiff's initial burden of establishing that federal jurisdiction exists, the Court concludes that Plaintiff has met its burden of providing a good-faith representation of an amount in controversy exceeding $75,000. *Scherer*, 347 F.3d at 397. Granted, Plaintiff has not alleged that he is entitled to a specific amount of monetary damages; however, it was not required to do so.[9] Moreover, Plaintiff has alleged that, in the past,

---

[8] While Defendant disputes the merits of Wohlfeld's assertions, it does not argue that the affidavit should not be considered with respect to its motion to dismiss. In any event, the Court concludes that Plaintiff has satisfactorily pleaded its claim (again, albeit barely) even without reference to Wohlfeld's affidavit.

[9] *See, e.g., Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 243 (E.D.N.Y. 2015) ("[W]hile it is true Plaintiff's Complaint does not allege a specific dollar amount with respect to the costs to indemnify and/or defend Defendants, Plaintiff is not required to do so as long as the face of the complaint is a good faith representation of the actual amount in controversy.").

14

Defendant has paid it monthly commissions "ranging from" $4,000 to $5,000 per month. (Dkt. No. 7 at ¶ 10.) Finally, Plaintiff's Complaint alleges that Defendant not only breached the Agreement by refusing to pay Plaintiff sales commissions, but also (by the same conduct) violated New York Labor Law § 191-c, entitling Plaintiff to recover double damages and attorney's fees.[10] Although there exists some doubt as to whether Plaintiff will ultimately be entitled to recover more than $75,000 (which will depend not only on liability, but also on the volume of sales upon which Plaintiff is entitled to commissions), there appears to be a "reasonable probability" that Plaintiff's claims are in excess of the jurisdictional amount. *Scherer*, 347 F.3d at 397.

Second, Defendant's arguments that Plaintiff is *factually unlikely* to be entitled to recover $75,000 based upon the amount of commissions paid to Plaintiff in previous years is insufficient to establish to a "legal certainty" that Plaintiff cannot recover the jurisdictional amount. *Cf., e.g., Leskinen v. Halsey*, 571 F. App'x 36, 39 (2d Cir. 2014) (summary order) (concluding that amount in controversy was less than $75,000 based upon "[p]ublic records attached to the complaint"

---

[10] Because double damages and attorney's fees are recoverable damages under the substantive law governing Plaintiff's claims, those damages and attorney's fees are includable for purposes of determining the amount in controversy. *See, e.g., BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 314 (S.D.N.Y. 2013) ("The Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy . . . where they are recoverable as of right pursuant to statute or contract.") (citations and internal quotation marks omitted); *Brown v. New York State Supreme Court for the Second Judicial Dist.*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. Jan. 26, 2010) (explaining that "a plaintiff may not rely upon a claim for damages that cannot be legally awarded under state law in order to meet the threshold amount," and that a finding that the amount in controversy falls below the jurisdictional amount is "allowed" only where [1] the terms of a contract limit plaintiff's potential recovery, [2] "a specific rule of substantive law or measure of damages limits the money recoverable," or [3] "independent facts" demonstrate that the amount claimed was "merely to obtain federal court jurisdiction"). The particular section of the statute at issue in this case provides that a "principal" who fails to provide "timely payment" to a "sales representative" under the statute "shall be" liable for double damages, and that the prevailing party in such an action "shall be entitled" to an award of, *inter alia*, attorney's fees. N.Y. Labor Law § 191-c(3).

listing the sale price of property as $515,000 and plaintiff's claim to her "rightful inheritance of 6.25% of that property's value," resulting in mathematically calculable damages of approximately $32,187.50); *Bindrum v. Am. Home. Assur. Co. Inc.*, 441 F. App'x 780, 781 (2d Cir. 2011) (summary order) (concluding that "the maximum amount of damages which plaintiff could have suffered" was $49,000, "which represent[ed] the aggregate amount of advances taken by plaintiff" as a result of defendant's delay in submitting Medicare Set-Aside proposal related to plaintiff's workers' compensation claims); *Tongkook Am., Inc.*, 14 F.3d at 785 ("Here, there is little ambiguity as to the amount Shipton owed Tongkook–both parties acknowledged that Shipton owed Tongkook, at most, approximately $37,000."); *Pang v. Allstate Ins. Co.*, 173 F.3d 845, 1999 WL 220145 (Table), at *1 (2d Cir. 1999) (concluding that amount in controversy did not meet statutory threshold where plaintiff sought only $1935.61 in compensatory damages and had not made "a good faith claim for punitive damages" in his complaint). Indeed, in its reply memorandum of law, Defendant does not argue that there is a "legal certainty" that Plaintiff cannot meet the amount in controversy requirement; instead, Defendant argues only that, based on Walker's assertions concerning Plaintiff's earned commissions from prior years, the amount in controversy regarding the period at issue is less than $75,000. (Dkt. No. 10 at 2 [Def.'s Reply Memo. of Law].) However, Walker's declaration (dated July 27, 2015) makes no reference to the volume of sales that give rise to commissions owed to Plaintiff in 2015. (Dkt. No. 6, Attach. 1, at ¶ 9 [Walker Decl., asserting that, because Plaintiff's annual commissions from past years averaged "just over" $33,000, "there is no realistic expectation that" potentially payable commissions "will increase appreciable between now and April 30, 2016"].)

For all of these reasons, the Court denies Defendant's request to dismiss Plaintiff's declaratory judgment claim and breach of contract claim.

### C. Whether Discovery Should Be Stayed

After Defendant filed its motion on July 27, 2015, the parties' Rule 16 Initial Conference (as well as the deadline for submission of a proposed Civil Case Management Plan) was adjourned without date pending resolution of Defendant's motion. (Text Notice, filed Aug. 12, 2015.) As a result, Defendant's motion to stay discovery pending the disposition of its motion to dismiss is denied as moot.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Defendant's motion to stay discovery is **DENIED as moot**; and it is further

**ORDERED** that Defendant file an answer to Plaintiff's Amended Complaint within fourteen (14) days of the date of this Decision and Order pursuant to Fed. R. Civ. P. 12(a)(4)(A). This case is referred back to Magistrate Judge Stewart for a Rule 16 conference and the scheduling of pretrial deadlines.

Dated: March 31, 2016
       Syracuse, New York

                                              Hon. Glenn T. Suddaby
                                              Chief U.S. District Judge